[Civ. No. 7773.   Third Dist.   Sept. 20, 1950.]

R. J. LaMILLER, Respondent, v. ST. CLAIRE PACKING CO., INC. (a Corporation) et al., Appellants.

Chester E. Watson, District Attorney, John J. Jones and Thomas E. Davis for Appellants.

Chadeayne & Wilkinson for Respondent.

PEEK, J.—Defendants appeal from a judgment in favor of plaintiff awarding him damages in the sum of $5,130 occasioned by the breach by defendant St. Claire Packing Company, sometimes referred to hereinafter as the Buyer, of a written contract wherein said company agreed to buy and plaintiff agreed to sell his 1947 tomato crop. Defendant United Pacific Insurance Company, as bondsman for the buyer under the provisions of section 1300.1a of the Agricultural Code, was held liable in the sum of $5,000, the limit of its bond.

The provisions of the contract pertinent to the issues raised on appeal are that the plaintiff "sold" all of the tomatoes grown on his land and the packing company "bought" the same for $29 per ton; that the tomatoes would not be less than 2¼ inches in diameter and would be delivered at "roadside" in boxes furnished by buyer, but that buyer would not be liable for failure to do so beyond the exercise of reasonable care.

Plaintiff's complaint alleges that defendant buyer breached the foregoing contract in that it failed to provide the boxes as provided for in the agreement and failed to accept the tomatoes at the times and in the manner contemplated by the contract. Demurrers by each defendant were overruled. Thereafter separate answers were filed, each of which generally denied the allegations of the complaint and affirmatively alleged that the contract had been terminated by mutual agreement of the parties and that the tomatoes did not comply with the provisions of the contract as to size. The trial court adopted findings of fact favorable to plaintiff, and from the judgment which was accordingly entered defendants have appealed.

Appellants' first attack upon the judgment is premised upon the proposition that respondent's tomatoes did not conform to the contract requirement as to size and therefore were subject to rejection, their argument in this regard being that conformity to such requirement was a condition precedent to the duty of the buyer to accept the tomatoes and that, in the absence of proof of compliance therewith, there was no liability on its part for nonacceptance. The record does not bear out this contention. The evidence in relation to such contention shows that until the buyer closed its cannery it accepted all of respondent's tomatoes, rejecting no deliveries for failure to conform to the minimum size requirements of the contract or for any other reason; that respondent's tomatoes were average in size; that the tomatoes under 2¼ inches in diameter were no more prevalent than those grown in adjacent fields,

the percentage of such size tomatoes being variously estimated at from 5 to 10 per cent of the entire crop, and that after defendant's cannery reopened it, as well as other canneries, accepted plaintiff's tomatoes without rejection.

Even assuming the evidence to have been otherwise, appellant buyer, by failing to timely reject any of respondent's tomatoes for failure to conform to the contract requirement as to size, as it now contends, and by reason of its acceptance and conversion of such tomatoes in its canning processes, thereby waived strict performance in accordance with the terms of the contract. (Civ. Code, § 1789; *Burrell* v. *Southern Cal. Canning Co.*, 35 Cal.App. 162 [169 P. 405]; see, also, 77 A.L.R. 1165; Restatement of Contracts, § 298.)

Appellants further attack the sufficiency of the evidence to sustain the finding that it had not exercised reasonable care in furnishing boxes to plaintiff as contemplated under the contract. This finding is adequately supported by the testimony of a field man for the buyer, who testified that the cannery did not have sufficient boxes for the amount of tomatoes grown on the acreage which the buyer had under contract; that plaintiff was continually short of boxes and that the trucks which were supposed to bring back boxes to plaintiff on their return trips did so only for approximately two-thirds of the time and that there were times when, by reason of the want of boxes, plaintiff's picking crews could pick only for part of a day. Plaintiff testified to the same effect, as did the labor contractor who supplied the picking crews for plaintiff and who, in addition, testified that on one occasion he was compelled, because of the lack of boxes, to lay off his crew from a Thursday to the following Monday. Under such evidence the trial court could reasonably find as it did, that the buyer had not exercised reasonable care in furnishing boxes to plaintiff.

Appellants further contend that the following letter written by the buyer to respondent constituted a rescission of the contract of the parties:

"To Whom it May Concern:

"Upon the above date St. Claire Packing Co., Inc., clears R. J. LaMiller from 1947 tomatoe contract which will permit him to sell to any other canners."

The foregoing letter was signed only by Mr. George W. Buttke, president of the packing company. It is appellants' contention that such writing contains all of the necessary ele-

ments required of a rescission by mutual consent, including consideration, mutuality and intent of the parties as evidenced by their testimony and conduct. Although his testimony relative to this phase of the case was contradicted by Buttke, plaintiff testified that he obtained such release to enable him to sell the tomatoes elsewhere and to minimize his damages resulting from the buyer's failure to furnish a sufficient number of boxes. This testimony was confirmed by plaintiff's witness Heinbockel. Plaintiff further testified that it was understood, and was so stated by Buttke, that if the cannery could again start packing it would take whatever tomatoes it could; that in fact some were shipped to the buyer, accepted and paid for by it following the execution of the writing above set forth.

We cannot agree with appellants' contention in this regard. The writing in question is more properly described, as did the trial judge in his memorandum opinion, as being not a release but more accurately "an authorization to sell." There is nothing contained therein which released the buyer from his obligation under the contract. All that was accomplished thereby was the right given to plaintiff to sell his tomatoes elsewhere, something which was necessary under the circumstances, in order that he could deal with other canneries.

█ Appellants' final contention attacks the award of damages as being too uncertain and speculative to afford any legal basis therefor. We likewise find no merit in this contention. The record discloses substantial evidence to support the conclusion of the trial judge in his computation thereof, with which we agree, which computation as shown by his memorandum opinion, was as follows:

"The evidence discloses that the crop ran at least eighteen tons per acre throughout producing a total of some 990 tons. Deducting therefrom the tonnage actually picked (690) tons the loss amounts to 300 tons. Deducting therefrom 30 tons representing undersized tomatoes on the basis of ten per cent of the total in accordance with the evidence the net loss amounts to 270 tons. Fixing the cost of picking at $10.00 per ton the money loss per ton is $19.00 or a total of $5130.00."

The judgment is affirmed.

Adams, P. J., and Van Dyke, J., concurred.